IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CANON HOSPICE, LLC**                                                                               **PLAINTIFF**

v.                                                                                       CAUSE NO. 1:14CV313-LG-RHW

**SYLVIA MATHEWS BURWELL,**
Secretary of the United States
Department of Health and Human Services                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motion for Summary Judgment [14] filed by the plaintiff Canon Hospice, LLC, and the Motion for Summary Judgment [17] filed by the defendant Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services. No responses were filed in opposition to the Motions. After reviewing the Motions, the administrative record in this matter, and the applicable law, the Court finds that Secretary Burwell's Motion for Summary Judgment should be granted, and the decision of the Provider Reimbursement Review Board (PRRB) should be affirmed. The Court further finds that Canon's Motion for Summary Judgment should be denied.

### BACKGROUND

Canon became a Medicare-certified hospice on January 3, 2007. Canon's designated Medicare intermediary, Palmetto GBA, determined that Canon had exceeded the Medicare program's twenty percent limitation on inpatient days for the period January 3, 2007 through October 31, 2008. Thus, Palmetto notified Canon that it was required to reimburse $344,263.00 in payments previously made

by Medicare. Canon timely appealed Palmetto's decision to the PRRB. The PRRB found that:

> [Palmetto] erred in calculating the Inpatient Day Limitation over a period greater than 12 months for [Canon's] cap year ended October 31, 2008. The Inpatient Day Limitation should have been calculated separately at the end of the cap periods ended October 31, 2008, and October 31, 2007.

(Admin. Rec. at 31, ECF No. 10). The Administrator of the Centers for Medicare and Medicaid Services declined to review the PRRB's decision. Thus, the PRRB's decision became the final decision of the United States Department of Health and Human Services. *See* 42 U.S.C. § 1395oo(f)(1).

Canon filed this administrative appeal seeking judicial review of the PRRB's decision to the extent that the PRRB determined that an inpatient day limitation should be calculated for the cap period ending October 31, 2007. Canon argues that it is improper to calculate an inpatient day limitation for this period, because Canon had not been in operation for the entire twelve month period preceding October 31, 2007. Canon and Secretary Burwell have filed cross-motions for summary judgment.

## DISCUSSION

42 U.S.C. § 1395oo(f)(1) provides for judicial review of final decisions made by the PRRB. The statute requires courts to apply the standard of review applicable to actions arising under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Community Care, LLC v. Leavitt*, 537 F.3d 546, 548 (5th Cir. 2008). Therefore, the proper standard of review is whether the agency action was "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with the law . . . ." *Id.* (citing 5 U.S.C. § 706(2)(A). This standard of review is "highly deferential," requiring a "presumption of regularity" on the part of the agency. *Hayward v. United States Dep't of Labor*, 536 F.3d 376, 379-80 (5th Cir. 2008).[1] The United States Supreme Court, while addressing a Medicare appeal, explained:

> We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation. This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal citations and quotation marks omitted).

Title XVIII of the Social Security Act establishes the Medicare program, which provides health insurance for the elderly and disabled. *See* 42 U.S.C. § 1395 et seq. In 1982, Congress expanded the Medicare Act to include hospice care for

---

[1] Canon argues that the PRRB's decision is not entitled to deference pursuant to *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212 (1988), which held "we have never applied [deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." As explained infra, the PRRB decision in the present case is supported by the plain language of the Medicare statute, regulations, and Claims Processing Manual. Therefore, the *Bowen* decision is distinguishable.

terminally ill beneficiaries. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97-248, § 122, 96 Stat. 365, 364. Congress authorizes and requires the Secretary of Health and Human Services to implement regulations necessary to administer the Medicare program. 42 U.S.C. § 1395ff(a)(1); 42 U.S.C. §1395hh(a)(1).

Congress imposed a cap on each hospice provider's overall Medicare reimbursement for each fiscal year. 42 U.S.C. § 1395(f)(i)(2). The Secretary implemented this overall cap on reimbursements by promulgating 42 C.F.R. § 418.309. Congress also imposed an inpatient day limitation on providers by including the following provision:

> The term "hospice program" means a public agency or private organization . . . which . . . provides assurance satisfactory to the Secretary that the aggregate number of days of inpatient care . . . provided in any 12-month period to individuals . . . does not exceed 20 percent of the aggregate number of days during that period on which such elections for such individuals are in effect . . . .

42 U.S.C. § 1395x(dd)(2)(A)(iii). To enforce the inpatient day limitation, the Secretary implemented a regulation providing that "the total payment to the hospice for inpatient care (general or respite) is subject to a limitation that total inpatient care days for Medicare patients not exceed 20 percent of the total days for which these patients had elected hospice care." 42 C.F.R. § 418.302(f)(1). The regulation further provides that the intermediary must calculate the limitation on payment for inpatient care "[a]t the end of the cap period." 42 C.F.R. § 418.302(f)(2). "Cap period means the twelve-month period ending October 31 . . . ."

42 C.F.R. § 418.3. The regulations require hospices to reimburse the Medicare program for payments made for inpatient stays that exceeded the twenty-percent inpatient day limitation. 42 C.F.R. § 418.302(f).

Palmetto, the Medicare intermediary assigned to Canon, determined that Canon had exceeded the twenty percent inpatient day limitation for the period January 3, 2007 through October 31, 2008. Thus, Palmetto notified Canon that it was required to reimburse $344,263.00 in payments made by Medicare. Canon appealed, arguing that Palmetto improperly considered a time period greater than twelve months when evaluating Canon's percentage of inpatient days. Palmetto argued that its determination was proper, citing the following provision of the Medicare Claims Processing Manual:

> The hospice cap is calculated in a different manner for new hospices entering the program if the hospice has not participated in the program for an entire cap year. In this situation, the initial cap calculations for newly certified hospices must cover a period of at least 12 months but not more than 23 months.

Ctrs. for Medicare & Medicaid Servs., Medicare Claims Processing Manual, Pub. 100-04, ch. 11, § 80.2.1.[2] In a well-reasoned opinion, the PRRB determined that this provision of the Manual applied solely to the overall cap imposed by 42 U.S.C. § 1395(f)(i)(2), not the inpatient day limitation.

With regard to the statute, 42 U.S.C. § 1395x(dd)(2)(A)(iii), the Board stated, "Through its use of the phrase 'provided in any 12-month period,' the Board finds

---

[2] This provision has since been relocated to the Medicare Benefit Policy Manual.

that the statute does not say the hospice must be open for the entire 12-month period, just that a 12-month period will be used for the calculation of the inpatient day limitation." (Admin. Rec. at 29, ECF No. 10). The PRRB further found that the regulation "unambiguously requires the Intermediary to calculate the limitation at the end of a cap period." (*Id.*); *see also* 42 C.F.R. § 418.302(f)(2) ("At the end of the cap period, the intermediary calculates a limitation of payment for inpatient care . . . ."). The PRRB noted that the regulation does not contain any exception to this requirement for providers that have been in operation for less than one year. As a result, the PRRB found that the inpatient day limitation pertaining to Canon should have been calculated separately on October 31, 2007, and October 31, 2008.

    Canon asserts that the PRRB's decision does not change the amount of funds that it will be required to reimburse Medicare. (Pl.'s Mem. at 8, ECF No. 15). Therefore, it has filed this request for judicial review, claiming that the PRRB ruling improperly applies the inpatient day limitation to a period less than twelve-months– the period beginning January 3, 2007, and ending October 31, 2007– because Canon was not in operation prior to January 3, 2007. Essentially, Canon argues that it should be exempted from the inpatient day limitation for the cap period ending October 31, 2007, because it was not in operation during that entire cap period.

    Canon first argues that the Medicare statute, regulations, manual provisions, and agency practice require that the inpatient day limitation be applied to a period of at least twelve months, but none of the authority cited by Canon expressly

requires a minimum period of time. The statute only refers to "the aggregate number of days of inpatient care . . . provided in any 12-month period to individuals." 42 U.S.C. § 1395x(dd)(2)(A)(iii). The regulation merely provides that the intermediary must calculate the limitation on payment for inpatient care "[a]t the end of the cap period." 42 C.F.R. § 418.302(f)(2). Neither the statute nor the regulation provides that a hospice must be in operation for the entire cap period before the inpatient day limitation can be applied.

Canon primarily relies on the agency's alleged practice[3] of applying section 80.2.1 of chapter 11 of the Medicare Claims Processing Manual to the inpatient day limitation. As explained previously, this Manual provision advises that "the initial cap calculations for newly certified hospices must cover a period of at least 12 months but not more than 23 months." However, Canon successfully argued before the PRRB that this provision pertaining to new hospices should *not* be applied to the inpatient day limitation. Therefore, all of Canon's arguments related to prior agency practice and the new hospice provision of the Manual are completely without merit in this appeal pursuant to Canon's own arguments before the PRRB.

Canon further argues:

Applying the rule over months prior to the initial participation date is

---

[3] Canon frequently claims that the Medicare program has never previously applied the inpatient day limitation to a period of less than twelve months, but the supporting basis for this assertion is unclear from the record. Canon merely relies on arguments and statements made by Palmetto before the PRRB. Nevertheless, the Court will assume that Canon's assertion is correct for the purposes of this Opinion only.

> improper because it doesn't give the hospice a full twelve-month period to come into compliance with the rule. It also subjects the hospice to Medicare rules before it ever signed its provider agreement with [Medicare]. It simply had no obligation to comply with that rule prior to the effective date of its provider agreement.

(Pl.'s Mem. at 12, ECF No. 15). First, as explained previously, neither the statute nor the regulation provide or imply that new hospices are entitled to operate for a full twelve month period before application of the inpatient day limitation. In fact, the regulation provides that the inpatient day limitation should be calculated at the end of *each* twelve-month cap period, and the statute only defines the term "hospice program" to include hospices that provide satisfactory assurance to the Secretary that the inpatient day limitation will be satisfied. Neither of these provisions creates any room for an exception for newly created hospices. Second, the Secretary is certainly not requiring Canon to satisfy the requirement during months it is not in operation, because there can be no "inpatient care"[4] during months when the hospice is not operating. Medicare is simply requiring Canon to satisfy the statute's twenty percent inpatient day limitation during the time that it actually cared for patients participating in the Medicare program.

Next, Canon argues that the PRRB's decision violates 42 U.S.C. § 1395hh(a)(2) and (e)(1) because "it results in a change in the substantive legal

---

[4] The statute refers to 42 U.S.C. § 1395x(dd)(1)(G) for the definition of "inpatient care." This provision pertains to "short-term inpatient care (including both respite care and procedures necessary for pain control and acute and chronic symptom management) in an inpatient facility meeting such conditions as the Secretary determines to be appropriate to provide such care . . . ."

-8-

standard governing the payment of services without being promulgated by the Secretary by regulation and it applies that change retroactively and to Canon's detriment." (Pl.'s Mem. at 13, ECF No. 15). 42 U.S.C. § 1395hh(a)(2) merely provides that "[t]he Secretary shall prescribe such regulations as may be necessary to carry out the administration of the [Medicare program]." 42 U.S.C. § 1395hh(e)(1) provides that:

> A substantive change in regulations, manual instructions, interpretive rules, statements of policy, or guidelines of general applicability under [the Medicare program] shall not be applied (by extrapolation or otherwise) retroactively to items and services furnished before the effective date of the change, unless the Secretary determines that (i) such retroactive application is necessary to comply with statutory requirements; or (ii) failure to apply the change retroactively would be contrary to the public interest.

Contrary to Canon's assertions, the PRRB did not amend the Manual or the regulations at issue. The PRRB merely held that Palmetto, Canon's intermediary, had improperly applied section 80.2.1 of the Manual to the inpatient day limitation. This determination was based on the plain language of the statute, the plain language of the regulation, and the plain language of sections 80.1, 80.2 and 80.2.1 of the Manual.[5] None of the language in any of this authority was changed by the PRRB; the language of this authority was actually relied upon and enforced by the PRRB. Since there was no change in the regulations, manual instructions, interpretive rules, statements of policy, or guidelines of general applicability, the

---

[5] Section 80.1 of the Manual, which explicitly pertains to the inpatient day limitation, provides, "This limitation is applied once each year, at the end of the hospices' 'cap period' (November 1 - October 31)."

PRRB's decision cannot be considered a retroactive change under 42 U.S.C. § 1395hh(e)(2).

The Court finds that the PRRB decision was reasonable and it was based on the plain language of the statute, regulations, and Manual at issue. Canon has not demonstrated that the decision should be overturned. Therefore, Canon's Motion for Summary Judgment is denied, and the Secretary's Motion for Summary Judgment is granted.

## CONCLUSION

For the foregoing reasons, the Secretary's Motion for Summary Judgment is granted, and Canon's Motion for Summary Judgment is denied. The decision of the PRRB is affirmed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [14] filed by the plaintiff Canon Hospice, LLC, is **DENIED**, and the Motion for Summary Judgment [17] filed by the defendant Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Canon's claims are **DISMISSED WITH PREJUDICE** and the decision of the PRRB is **AFFIRMED**.

**SO ORDERED AND ADJUDGED** this the 1st day of September, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE